SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**<u>Philip Pantano v. New York Shipping Association</u> (A-19-22) (087217)**

**Argued April 25, 2023 -- Decided June 5, 2023**

**SABATINO, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

This personal injury case involves application of the multi-factor test announced in <u>Galvao v. G.R. Robert Construction Co.</u>, 179 N.J. 462, 471-73 (2004), for evaluating whether a worker who negligently caused a plaintiff's jobsite injury was a so-called "borrowed employee" of the plaintiff's own employer. The Court considers whether an employer's vicarious liability under the borrowed-employee doctrine, as guided by the <u>Galvao</u> factors, is a question of law to be decided by the court or, conversely, a question of fact reserved for the jury.

In November 2013, plaintiff Philip Pantano, a mechanic employed by Container Services of New Jersey (CSNJ), was injured at work while attempting to move a heavy piece of industrial equipment. Lawrence Giamella, who was also working on the site that day, tried to help plaintiff move the equipment with a forklift; plaintiff's foot was crushed in the process. Plaintiff collected workers' compensation benefits from his employer, CSNJ. He and his wife also brought a personal injury action against numerous defendants, including Marine Transport, Inc. (MT). MT and CSNJ are related companies owned by the same person. The core of the parties' dispute concerns which entity or entities employed the negligent worker, Giamella, at the time of the accident: MT, CSNJ, or both companies.

The trial court granted summary judgment in favor of CSNJ because of the statutory bar established by N.J.S.A. 34:15-8. MT also moved for summary judgment, arguing that it was not Giamella's employer and was therefore not vicariously liable for his negligence. Although Giamella was on MT's payroll, MT raised the affirmative defense that he was a "borrowed servant" or "special employee" working for CSNJ at the time of the accident, applying the multi-factor test set forth in <u>Galvao</u>. The pretrial judge denied MT's motion.

At the close of plaintiff's case, MT moved for judgment pursuant to <u>Rule</u> 4:40-1, founded on the same borrowed-employee theory it had raised earlier in its summary judgment motion. The trial judge did not rule on the motion, reserving judgment for after the jury verdict.

1

The jury awarded plaintiff damages for pain and suffering, lost wages, and loss of consortium. Pursuant to an agreement reached by counsel, the jury was asked to presume that MT was vicariously liable and was not asked to resolve the borrowed-employee question. Instead, counsel assented to have the court resolve the borrowed-employee argument through the mechanism of MT's yet-to-be-decided Rule 4:40-1 motion. In essence, the agreement contemplated that if the court ruled in MT's favor on the motion and found that Giamella was, in fact, a borrowed employee working for CSNJ, then MT would not be liable for a jury award. Conversely, if the court denied MT's motion, then MT would be liable for the award under the parties' agreement.

The trial judge vacated the verdict and awarded judgment to MT, concluding that Giamella was a borrowed employee working for CSNJ when the accident occurred. The Appellate Division reversed, vacated the directed verdict, and reinstated the jury verdict in plaintiff's favor. The Court granted MT's petition for certification limited to whether the court or the jury should determine the borrowed-employee issue. 252 N.J. 244 (2022).

**HELD:** Application of the Galvao multi-factor test -- which can involve matters of disputed fact and witness credibility -- is presumptively for a jury to determine. The court itself should not resolve the borrowed-employee issue unless the evidence concerning the factors is so one-sided that it warrants judgment in a moving party's favor as a matter of law. Because the evidence in this case concerning the Galvao factors was not sufficiently one-sided, the trial court incorrectly granted defendant's Rule 4:40-1 motion and deemed the worker who caused the accident a borrowed employee of plaintiff's own employer.

1. An employer is generally responsible for harm suffered by third parties through any negligent work-related acts of its employees. In some situations, an employer, known as a "general employer," loans one of its workers to another employer, known as a "special employer," for defined tasks or purposes. When such arrangements are created and the loaned or "borrowed" worker negligently injures someone, questions arise regarding whether the general employer is vicariously liable for that negligence, whether the special employer is liable, or whether both employers are liable. Galvao fused two historical tests for resolving the liability issue in borrowed-employee cases -- the "control test" and the "business furtherance test." Under the hybrid Galvao test, "control" is the threshold inquiry. There are four methods by which a party can demonstrate control: through direct evidence of on-spot control, or by showing that an employer has "broad" control based on (1) the "method of payment"; (2) who "furnishes the equipment"; or (3) the "right of termination." 179 N.J. at 472. "The retention of either on-spot, or broad, control by a general employer would satisfy this first prong." Ibid. (emphasis added). If (and only if) the general employer is found to have control, the analysis moves onto the

2

"business-furtherance prong."  Ibid.  A worker is furthering the general employer's business if the work being done is within the general contemplation of the general employer and the general employer derives an economic benefit by loaning its employee.  Id. at 472-73.  Galvao also provided guidance for when a worker may be serving as a dual employee of both the general and special employers.  (pp. 10-13)

2.  The independent strands of case law before Galvao using either the control test or the business furtherance test plainly signified that a jury, not a judge, presumptively must evaluate whether a negligent worker who causes an accident was or wasn't a "borrowed employee" of the special employer.  The Court reviews relevant case law and observes that the pre-Galvao tradition of presumptively deeming borrowed-employee disputes as questions of fact for a jury makes sense.  Factual disputes about control and business advantage can readily turn on the assessment of the credibility of competing witnesses.  Juries are well-suited to making those assessments, as they are for a host of other factual disputes entrusted to them at trial.  The Court finds that nothing in Galvao did or should change that traditional allocation of the jury's role in borrowed-employee disputes, although it notes that the court may decide the issue without a jury upon a summary judgment motion or on a Rule 4:40-1 motion if the proofs at trial on the issue are sufficiently one-sided.  The Court thus reaffirms that the traditional role of the jury as the finder of fact in resolving borrowed-employee questions was unaltered by Galvao.  The jury, not the trial judge, presumptively applies Galvao's hybrid multi-part test, subject to possible motion practice before trial under Rule 4:46-2 and at trial under Rule 4:40-1.  The Court recommends that the Model Civil Jury Charges Committee consider whether a specific model charge, with perhaps a recommended verdict form, should be developed to assist jurors in applying the Galvao factors.  (pp. 13-17)

3.  Applying those principles and viewing the trial record in the light most favorable to plaintiff as the non-moving party, the Court explains why the evidence pertinent to the Galvao factors, at the very least, pointed in both directions.  It was improper for the trial court to decide a Rule 4:40-1 motion in MT's favor with such a mixed record, and the motion should have been denied.  Ordinarily that would mean that the borrowed-employee issue should be presented to the jury to resolve.  However, because both sides made clear in light of their agreement that they did not desire a remand to the trial court for a new jury trial on the agency issues, the consequence of the denial of the Rule 4:40-1 motion is to reinstate the jury's verdict and to hold MT vicariously liable for the molded damages award.  (pp. 17-19)

**AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER join in JUDGE SABATINO's opinion. JUSTICE FASCIALE did not participate.**

3

SUPREME COURT OF NEW JERSEY
A-19 September Term 2022
087217

Philip Pantano and Phyllis Pantano,

Plaintiffs-Respondents,

v.

New York Shipping Association, Container Services, Inc.,
Hyster-Yale Group, Inc., 303 Doremus Urban Renewal,
NAP Realty Corporation, Eastern Lift Truck Co., Inc.,
Metropolitan Marine Maintenance Contractors' Association,
Inc., and Port Technical Training Institute,

Defendants,

and

Marine Transport, Inc.,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| April 25, 2023 | June 5, 2023 |

Patrick B. Minter argued the cause for appellant
(Donnelly Minter & Kelly, attorneys; Patrick B. Minter
and Jared J. Limbach, of counsel and on the briefs, and
David M. Blackwell, on the briefs).

Matthew A. Schiappa argued the cause for respondents
(Lomurro, Munson, Comer, Brown & Schottland,

attorneys; Matthew A. Schiappa and Christina Vassiliou Harvey, of counsel and on the briefs).

JUDGE SABATINO (temporarily assigned)
delivered the opinion of the Court.

This personal injury case involves the application of the multi-factor test we announced in Galvao v. G.R. Robert Construction Co., 179 N.J. 462, 471-73 (2004), for evaluating whether a worker who negligently caused a plaintiff's jobsite injury was a so-called "borrowed employee" of the plaintiff's own employer. Our grant of certification is confined to whether an employer's vicarious liability under the borrowed-employee doctrine, as guided by the Galvao factors, is a question of law to be decided by the court or, conversely, a question of fact reserved for the jury.

Defendant argues the Appellate Division erred by reversing the trial judge's determination that the negligent worker who caused plaintiff's injury in this case was a borrowed employee, and by construing the record as indicative of genuine issues of material fact for a jury under the Galvao factors. Defendant stresses that this Court's opinion in Galvao did not expressly require the factors to be evaluated by juries rather than by trial courts. Defendant also relies upon several illustrative cases in which borrowed-employee status was resolved by the trial court, either on summary

2

judgment before trial pursuant to <u>Rule</u> 4:46-2 or on a motion for judgment at trial pursuant to <u>Rule</u> 4:40-1.

We reject defendant's contentions. Amplifying <u>Galvao</u>, we hold that the application of the multi-factor test -- which can involve matters of disputed fact and witness credibility -- is presumptively for a jury to determine. The court itself should not resolve the borrowed-employee issue unless the evidence concerning the factors is so one-sided that it warrants judgment in a moving party's favor as a matter of law.

The fact that the records in some past borrowed-employee cases were sufficiently one-sided for the court to determine the worker's status does not signify that we should depart from pre-<u>Galvao</u> case law treating that status as a presumptive jury issue.

As the Appellate Division rightly concluded, because the evidence in this case concerning the <u>Galvao</u> factors was not sufficiently one-sided, the trial court incorrectly granted defendant's <u>Rule</u> 4:40-1 motion and deemed the worker who caused the accident a borrowed employee of plaintiff's own employer. Consequently, we affirm the Appellate Division's judgment to enforce the parties' mutual agreement to implement the jury verdict if defendant's motion failed.

3

I.

The facts and procedural history relevant for our purposes may be stated concisely. On November 19, 2013, plaintiff Philip Pantano, a mechanic employed by Container Services of New Jersey (CSNJ), was injured at work while attempting to move a heavy piece of industrial equipment (called a "genset") he had knocked on its side. Lawrence Giamella, who was also working on the site that day, tried to help plaintiff move the genset back into position with a forklift. As Giamella operated the forklift, a chain slipped, causing the genset to crush plaintiff's left foot. After several unsuccessful surgeries, plaintiff's foot was amputated.

Plaintiff collected workers' compensation benefits from his employer, CSNJ. He and his wife also brought a personal injury action against numerous defendants,[1] including petitioner Marine Transport, Inc. (MT).

The core of the parties' dispute concerns which entity or entities employed the negligent worker, Giamella, at the time of the accident: MT, CSNJ, or both companies. MT and CSNJ are related companies owned by Robert Castelo. The companies jointly lease and occupy a large shipping yard on the Newark waterfront.

---

[1] None of the other named defendants are pertinent to the issues before us.

CSNJ is in the business of repairing shipping equipment, such as containers and refrigeration systems. MT, meanwhile, is in the trucking business, transporting containers from Port Newark to their inland destinations, although MT's employees regularly perform mechanical work for CSNJ's customers. The revenues from that mechanical work go to CSNJ, and CSNJ does not reimburse MT.

CSNJ is a union shop employer bound by a collective bargaining agreement that requires CSNJ to pay its unionized workers time-and-a-half overtime wages on weekends and holidays. By contrast, MT is not a union shop. At times, CSNJ's unionized employees worked on MT's payroll on the weekends at their regular, weekday wages. All workers at the shared workplace were supervised by a manager paid exclusively by CSNJ.

Plaintiff claimed that MT helped operate the yard and should have known about CSNJ's negligence. The trial court dismissed the claims against all co-defendants except for CSNJ, MT, and the companies' landlord, and discovery ensued.

Following discovery, the remaining defendants moved for summary judgment. The court granted the landlord's motion because of a delegation-of-duties provision within its lease with CSNJ and MT. The court also granted CSNJ's motion because of the statutory bar that precludes, except in rare

5

instances involving an intentional tort or its equivalent, injured workers from bringing tort cases against their own New Jersey employers or arising out of the negligence of their fellow employees unless the employer has agreed to opt out of the workers' compensation system. See N.J.S.A. 34:15-8.

In seeking summary judgment, MT argued that it was not Giamella's employer and was therefore not vicariously liable for his negligence. Although Giamella was on MT's payroll, MT raised the affirmative defense that he was a "borrowed servant" or "special employee" working for CSNJ at the time of the accident, applying the multi-factor test set forth in Galvao. The pretrial judge then handling the case found there were unsettled issues of material fact on the Galvao factors and denied MT's motion.

After an initial mistrial, plaintiff and MT had an eight-day jury trial in December 2019. At the close of plaintiff's case, MT moved for judgment pursuant to Rule 4:40-1, founded on the same borrowed-employee theory it had raised earlier in its summary judgment motion. The trial judge did not rule on the motion, reserving judgment for after the jury verdict.

The jury found Giamella seventy percent negligent and plaintiff thirty percent negligent. It awarded plaintiff damages for pain and suffering, lost wages, and loss of consortium, which the trial judge molded to $861,000 pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15-5.2(d). Pursuant

6

to an agreement reached by counsel, the jury was asked to presume that MT was vicariously liable and was not asked to resolve the borrowed-employee question. Instead, counsel assented to have the court resolve the borrowed-employee argument through the mechanism of MT's yet-to-be-decided <u>Rule</u> 4:40-1 motion. In essence, the agreement contemplated that if the court ruled in MT's favor on the motion and found that Giamella was, in fact, a borrowed employee working for CSNJ, then MT would not be liable for a jury award. Conversely, if the court denied MT's motion, then MT would be liable for the award under the parties' agreement. Although the trial judge initially expressed reluctance to proceed in this manner, he acquiesced to counsel's plan.

After considering additional proofs on the borrowed-employee issue outside of the jury's presence, the trial judge vacated the verdict and awarded judgment to MT as a matter of law in a written opinion. The judge concluded that Giamella was a borrowed employee working for CSNJ when the accident occurred. Applying the <u>Galvao</u> factors, which we will discuss below, the trial judge found that: (1) "in every practical sense Giamella was a functional employee of CSNJ" due to CSNJ's control over his work, and (2) "there [was] no evidence that MT derived an economic benefit by providing the services of Giamella to CSNJ." Plaintiff appealed that ruling.

In a detailed opinion, the Appellate Division reversed the trial court and reinstated the jury verdict. Like the trial judge, the appeals court expressed a reticence to resolve Giamella's status as a matter of law, observing that "[f]acts central to the question, if not the very question itself, could have been determined by the jury." But, despite that reticence, the court abided by the agreed-upon process that removed the status issue from the jury.

Turning to that issue, the Appellate Division found the trial judge erred by performing a complete analysis of the Galvao factors and reaching a conclusion on the merits of the borrowed-employee question after weighing the evidence. According to the appeals court, the trial judge should have performed a directed verdict analysis in accordance with Rule 4:40-1's requirement that the court evaluate such a motion by viewing the trial proofs in the light most favorable to the non-moving party, here the plaintiff.

Applying that standard, the Appellate Division discerned that there was substantial evidence to support both main prongs of the Galvao test (control and business furtherance) in plaintiff's favor, which more than satisfied plaintiff's burden under Rule 4:40-1 of presenting a scintilla of proof to successfully oppose a directed verdict motion. Specifically, the appeals court ruled there was "enough evidence for a jury to have found MT retained sufficient control of Giamella," especially because MT paid for Giamella's

forklift training after the accident. The court also disagreed with the trial judge that MT received no financial benefit, stating that such a conclusion "defies common sense." The appeals court inferred from the record that "MT obviously received financial benefit from the arrangement, or it would not have participated in it." The court found the idea that MT would simply donate Giamella's labor to CSNJ "not only inconceivable . . . but incongruent with the indulgent standard afforded the plaintiff[] when considering the evidence of record on a motion under Rule 4:40-1." Consequently, the court vacated the directed verdict and reinstated the jury verdict in plaintiff's favor.

MT then filed a petition for certification, raising several points. As its primary argument in its petition, MT contended that the borrowed-employee question "is purely a legal issue" that should not be decided by a jury. Nor should the issue be evaluated by a court with any concern about how a jury might consider or weigh the Galvao factors. Instead, the court should decide the issue itself on a plenary basis, as the trial judge did here. According to MT, the Appellate Division mistakenly overturned the trial court's plenary finding that Giamella was CSNJ's borrowed employee. MT thus urges that the judgment in its favor be reinstated.

As we noted at the outset, we granted the petition solely on a limited but core issue: whether an employer's vicarious liability under the borrowed-

9

employee doctrine, as guided by the Galvao factors, is a question of law to be decided by the court or, conversely, a question of fact reserved for the jury. 252 N.J. 244 (2022).

## II.

The borrowed-employee doctrine, also known as the "special employee" (or, in a former era, "borrowed servant") doctrine of vicarious liability, was established long ago in our jurisprudence. The doctrine's origins and rationale were described at length in this Court's opinion in Galvao, see 179 N.J. at 467-71, and we need not repeat that discussion in full.

With respect to the basic concept of vicarious liability, it will suffice to say here that a party "who expects to derive a benefit or advantage from an act performed on [that party's] behalf by another must answer for any injury that a third person may sustain from it." Id. at 468 (quoting Carter v. Reynolds, 175 N.J. 402, 408 (2003)). Thus, an employer is generally responsible for harm suffered by third parties through any negligent work-related acts of its employees. In some situations, an employer, known as a "general employer," loans one of its workers to another employer, known as a "special employer," for defined tasks or purposes. When such arrangements are created and the loaned or "borrowed" worker negligently injures someone, questions arise regarding whether the general employer is vicariously liable for that

10

negligence, whether the special employer is liable, or whether both employers are liable.

Before this Court's opinion nineteen years ago in Galvao, the "borrowed employee" doctrine developed through two distinct tests to determine whether a general employer would be liable for an employee's negligence. In one line of cases, the law examined whether the borrowed employee was under the control of the general employer, as measured by several factors. Id. at 468. In another line of cases, the law considered whether the borrowed employee's work furthered the business interests of the general employer. Ibid.

Galvao fused the historical "control test" with the historical "business furtherance test." The Court's opinion created, going forward, a hybrid test to be applied in resolving borrowed-employee liability disputes. The two-part test was explained in Galvao as follows.

"Control" is the threshold inquiry. Id. at 472. There are four methods by which a party can demonstrate control. Id. at 472-73. The first is showing "on-spot" control, which is "the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done." Id. at 472 (quoting Wright v. State, 169 N.J. 422, 436-37 (2001)). As an alternative to direct evidence of on-spot control, parties can show that an employer has

11

"broad" control in any of three ways: based on (1) the "method of payment"; (2) who "furnishes the equipment"; and (3) the "right of termination." Ibid. (quoting Wright, 169 N.J. at 437). "The retention of either on-spot, or broad, control by a general employer would satisfy this first prong." Ibid. (emphasis added). A "lack of control ends the inquiry." Id. at 474.

If (and only if) the general employer is found to have control, the analysis moves onto the "business-furtherance prong." Id. at 472. A worker is furthering the general employer's business if both "'the work being done [by the loaned employee] is within the general contemplation of the [general employer,]' and the general employer derives an economic benefit by loaning its employee." Id. at 472-73 (second alteration in original) (emphases added) (quoting Viggiano v. William C. Reppenhagen, Inc., 55 N.J. Super. 114, 119 (App. Div. 1959)). If the general employer either did not expect or intend for the employee to perform the relevant project for the special employer or did not receive a benefit from the employee's work, then the employee is a borrowed employee in the employ of the borrowing employer, regardless of who controlled the employee. Id. at 474.

Galvao further refined the law by noting that, in some instances, a worker may be serving as a dual employee of both the general employer and the special employer. Id. at 474-75. The opinion "recognize[d] that a situation

12

can arise where general and special employers both retain some control over a project and both stand to reap an economic benefit from it." Id. at 474. "In those circumstances, allocating liability between the responsible parties might be appropriate as it would in any matter in which two or more parties are responsible for a plaintiff's injuries." Id. at 474-75.

III.

We now focus on the sole doctrinal question before us: whether the multi-factor Galvao test should be applied by a jury or by the trial judge.

The independent strands of case law before Galvao using either the control test or the business furtherance test plainly signified that a jury, not a judge, presumptively must evaluate whether a negligent worker who causes an accident was or wasn't a "borrowed employee" of the special employer.

Almost a century ago in Pedersen v. Edward Shoe Corp., the Court of Errors and Appeals ruled that a jury, rather than a judge, properly decided the question of whether a coal delivery boy who caused an accident to a passerby when delivering coal to a shoe cobbler's shop "lost his identity" as the coal company's worker and became a borrowed employee and agent of the cobbler. 104 N.J.L. 566, 567-68 (E. & A. 1928). Fifteen years later, that same court in Younkers v. Ocean County stated that when there are "conflicting inferences" that could be drawn from the evidence about whether a worker had the status

13

of a borrowed employee, "submitting the case to the jury was correct." 130 N.J.L. 607, 610 (E. & A. 1943). Later, in <u>Larocca v. American Chain & Cable Co.</u>, this Court reiterated that when "the posture of the evidence" made the employment relationship "not determinable as a matter of law," the trial court "should have submitted [the] question to the jury." 13 N.J. 1, 7 (1953). Likewise, in <u>Gibilterra v. Rosemawr Homes, Inc.</u>, this Court stated that the borrowed-employee question "is a question for jury determination on the proofs." 19 N.J. 166, 172 (1955). More recently before <u>Galvao</u>, we noted in <u>Volb v. G.E. Capital Corp.</u>, that the Court of Errors and Appeals in <u>Younkers</u> correctly treated the borrowed-employee issue as a "jury question." 139 N.J. 110, 129 (1995).

This pre-<u>Galvao</u> tradition of presumptively deeming borrowed-employee disputes as questions of fact for a jury makes sense. In many instances, the general employer's witnesses and proofs will clash with those presented and relied upon by the opposing side. Factual disputes about control and business advantage can readily turn on the assessment of the credibility of competing witnesses. Juries are well-suited to making those assessments, as they are for a host of other factual disputes entrusted to them at trial.

To be sure, certain pertinent facts affecting borrowed or special employment may be readily and objectively established, such as which

14

employer paid the worker for the services rendered. But other aspects of the multi-part test may require a trier of fact to sort out. In fact, a comparable New Jersey model jury charge has been used for decades to guide jurors in evaluating a tortfeasor's employment status in garden-variety vicarious liability cases, such as when a truck driver collides with a plaintiff and the truck's owner contends the driver was not acting as an agent within the scope of employment. See Model Jury Charges (Civil), 5.10H, "Agency" (rev. Aug. 2011) (formerly 5.10I); see also Estate of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 596 (2015) (stating that the model charge is based on Restatement (Second) of Agency § 220 (1958), which provides factors for differentiating a "servant" -- now termed "employee" -- from an "independent contractor" in respondeat superior cases).

Nothing in Galvao did or should change that traditional allocation of the jury's role in borrowed-employee disputes. Although we did not explicitly say in Galvao that the tradition should continue under the hybrid multi-factor test, there was no need to do so. MT fails to provide us with any reasoned argument as to why the jury's role should be diminished or altered by Galvao.[2]

---

[2] That said, we do recommend that the Model Civil Jury Charges Committee consider whether a specific model charge, with perhaps a recommended verdict form, should be developed to assist jurors in applying the Galvao factors.

15

This is not to say that all disputes over borrowed-employee status must be sent to the jury in every case. Before trial, either the plaintiff or defendant can move for full or partial summary judgment under Rule 4:46-2 and ask the trial court to resolve the status question. If, under the well-established summary judgment standard, the court finds the evidence, even viewed in the light most favorable to the non-moving party with all reasonable inferences, is so one-sided that there are no genuine issues of disputed material facts, the court may decide the issue without a jury. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Likewise, if the proofs at trial on the issue are that one-sided, the trial court may render a judgment on it as a matter of law upon a motion filed under Rule 4:40-1. Id. at 536; Frugis v. Bracigliano, 177 N.J. 250, 269 (2003). "The role of the judge in that procedure is to determine whether there is a genuine issue as to a material fact, but not to decide the issue if [the judge] finds it to exist." Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 73 (1954).

MT points to one reported federal case, Kelley v. Edison Township, 377 F. Supp. 2d 478 (D.N.J. 2005), and multiple unreported cases in which the borrowed-employee dispute was decided by the court as a matter of law, either on summary judgment or on a mid- or post-trial motion under Rule 4:40-1. But MT misreads the significance of those cases. They are simply instances in

16

which the facts were so one-sided as to warrant the court's departure from the default rule that the jury normally decides the borrowed-employee question. They do not mean that the default approach is to have the court decide the issue.

In sum, we reaffirm here that the traditional role of the jury as the finder of fact in resolving borrowed-employee questions was unaltered by Galvao. The jury, not the trial judge, presumptively applies Galvao's hybrid multi-part test, subject to possible motion practice before trial under Rule 4:46-2 and at trial under Rule 4:40-1.

## IV.

We conclude by briefly applying those principles to this case. In the posture of MT's motion it chose to file under Rule 4:40-1, we must view the trial record in the light most favorable to plaintiff as the non-moving party. Having done so, we agree with the Appellate Division that on the first Galvao prong of control, the evidence was not sufficiently lopsided to conclude as matter of law that MT relinquished its control over Giamella once he started performing tasks for CSNJ at the jobsite. As noted by the Appellate Division, several facts weighed in plaintiff's favor on the control prong. Among other things, they include the fact that MT paid Giamella and, critical to plaintiff's theory that negligent forklift operation caused his injury, the fact that MT

17

failed to provide Giamella with legally required forklift training. At least some indicia of control by MT are present, thereby posing fact questions for the jury to weigh and resolve. We agree with the appeals court that the trial court committed error in finding conclusively that MT lacked control over Giamella.

We also concur with the Appellate Division that the trial court erred in concluding as a matter of law that Giamella's activities at the jobsite were not in furtherance of MT's business interests, being outside MT's general contemplation, and not providing MT with any economic benefit. As counterproof to that finding, we underscore the Appellate Division's reference to MT's website, which touted that its customers could obtain repair services arranged by MT but performed by CSNJ mechanics. That MT advertised repair services could support a finding that such activities were within its general contemplation. And the fact that CSNJ received the direct payments for those repair services did not eliminate the potential business advantage gained by MT in attracting clientele. As the Appellate Division noted, a "decision to operate through interlocking corporations reflects the pragmatic determination that the specific advantages derived from the multi-corporate enterprise outweigh the risk of tort liability that that form of enterprise entails." (quoting Volb, 139 N.J. at 126).

18

On the whole, the evidence pertinent to the <u>Galvao</u> factors, at the very least, pointed in both directions. It was improper for the trial court to decide a <u>Rule</u> 4:40-1 motion in MT's favor with such a mixed record. We agree with the Appellate Division that the motion should have been denied.

Ordinarily that would mean that the borrowed-employee issue should be presented to the jury to resolve. However, because both sides made clear to us in light of their agreement that they did not desire a remand to the trial court for a new jury trial on the agency issues, the consequence of the denial of the <u>Rule</u> 4:40-1 motion is to reinstate the jury's verdict and to hold MT vicariously liable for the molded damages award.

V.

The judgment of the Appellate Division is affirmed, and a final judgment is awarded in favor of plaintiff, remanding this case to the trial court for the entry of a final judgment that reinstates the jury verdict.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER join in JUDGE SABATINO's opinion. JUSTICE FASCIALE did not participate.